UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL D. WATSON,

                                        Plaintiff,

                -vs-

                                                                05-CV-877C(SR)

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                        Defendant.

_____

        Plaintiff Michael D. Watson initiated this action pursuant to Section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Social Security disability insurance ("SSDI") benefits.   The Commissioner has filed a

motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure (Item 6), and plaintiff has filed a cross-motion for judgment on the pleadings

(Item 9).   For the following reasons, the Commissioner's motion is denied, and plaintiff's

cross-motion is granted.


                                        **BACKGROUND**

        Plaintiff was born on January 22, 1965 (Tr. 133).[1]   He applied for SSDI benefits on

January 29, 2001, alleging disability as of May 17, 2000 due to neck and back pain

resulting from cervical spine and lumbar disc injuries, and carpel tunnel syndrome in the

_____

        [1]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

dominant left wrist (Tr. 133-38).  Plaintiff's application was denied initially on June 6, 2001 (Tr. 100).  Plaintiff requested a hearing, which was held on January 8, 2003 before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 38-94).  Plaintiff testified and was represented by counsel at the hearing.  Timothy P. Janikowski, Ph.D., a vocational expert, also testified at the hearing.

By decision dated September 23, 2003, ALJ Mazzarella found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 17-33).  Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that plaintiff's impairments (including chronic back discomfort, chronic neck discomfort, shoulder discomfort, and carpal tunnel syndrome affecting the dominant left hand), while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ considered plaintiff's allegations and testimony regarding his functional limitations, but found plaintiff to be "not totally credible" in this regard (T. 31).  The ALJ then found that while plaintiff was unable to perform his past work as a diesel mechanic, security guard, truck driver, or laborer, plaintiff had the residual functional capacity for a range of sedentary work[2] with certain

---

[2]"Sedentary work" is defined in the Commissioner's Regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

limitations which, when considered along with plaintiff's age (37 at the time of the decision), educational background (high school or equivalent, but functioning at a marginal level), and the testimony of the vocational expert, led to the conclusion that "there are a significant number of jobs in the national economy that [plaintiff] could perform" (T. 32).  The ALJ's decision became the Commissioner's final determination on November 3, 2005, when the Appeals Council denied plaintiff's request for review (Tr. 7-9).

Plaintiff then filed this action on December 14, 2005, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On July 17, 2006, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record.  Plaintiff responded by filing a cross-motion for judgment on the pleadings, arguing that the denial of his application should be reversed because the ALJ failed to properly evaluate all of the objective medical evidence and the opinions of plaintiff's treating sources, resulting in erroneous findings regarding residual functional capacity.

For the reasons that follow, the Commissioner's motion for judgment on the pleadings is denied, and plaintiff's cross-motion for judgment on the pleadings is granted.

---

20 C.F.R §§ 404.1567(a).  According to Social Security Ruling ("SSR") 83-10:

> "Occasionally" means occurring from very little up to one-third of the time.
> Since being on one's feet is required "occasionally" at the sedentary level
> of exertion, periods of standing or walking should generally total no more
> than about 2 hours of an 8-hour workday, and sitting should generally
> total approximately 6 hours of an 8-hour workday.  Work processes in
> specific jobs will dictate how often and how long a person will need to be
> on his or her feet to obtain or return small articles.

## <u>DISCUSSION</u>

**I.    Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

-4-

## II.    Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional

capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids").[3] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of May 17, 2000 (T. 31). Upon exhaustive review of plaintiff's medical records, the ALJ found that plaintiff suffered from chronic back and neck discomfort, shoulder discomfort, and carpal tunnel syndrome affecting the left hand which, while "severe," did not individually or in combination meet or equal the requirements of the Listings (T. 31).

Proceeding to the fourth step of the evaluation process, the ALJ determined that plaintiff's impairments prevented him from performing his past relevant work (T. 32). At this point, the burden shifted to the Commissioner to show that there are other jobs existing in

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

significant numbers in the national economy that plaintiff could perform, considering his

residual functional capacity in conjunction with his age, education, and work experience.

In this regard, the ALJ first found that plaintiff retained the residual functional

capacity to:

> sit for up to two hours at one time and, with normal breaks and meal periods,
> up to a total of eight hours during the course of an eight-hour workday; stand
> or walk on an occasional basis and up to a total of two hours in an eight-hour
> workday; and lift or carry up to ten pounds on an occasional basis.  In
> addition, because of his carpal tunnel syndrome the claimant should not
> constantly use his left hand for gripping with strength or constant handling
> and fingering, and because of his chronic left shoulder and neck discomfort
> the claimant should not use his left arm above shoulder level.

(Tr. 32).    According to the ALJ, while these functional limitations precluded the

performance of the full range of sedentary work or the transfer of any skills, there remained

a significant number of jobs in the national and local economy that plaintiff could perform

considering his age (younger individual; 38 years old at the time of the ALJ's decision) and

education (high school equivalent, but functioning at a marginal level), requiring a finding

of "not disabled" under the Social Security Act (*id.*).

In his motion for judgment on the pleadings, plaintiff seeks reversal of this

determination, or remand for further consideration of his claim, primarily on the ground that

the ALJ failed to properly consider the medical opinion evidence provided by several

treating sources in drawing the conclusion as to residual functional capacity.  What follows

is the court's assessment of this contention in light of the rules which the ALJ must follow

in evaluating treating source evidence, as set forth in the Regulations and controlling case

law.

### III.   Evaluation of Medical Opinion Evidence

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In this case, the record contains several opinions of treating physicians as to the nature and severity of plaintiff's impairments. For example, the record indicates that plaintiff was seen on a regular basis by Dr. James Collier, his treating primary physician, following a motor vehicle accident which occurred on May 8, 2000 (*see* Tr. 363-425). On May 15, 2000, plaintiff reported that he was hit from behind by a truck and suffered whiplash (Tr. 418). There was mild numbness and weakness in the left hand, with severe lumbar tenderness (*id.*). On June 14, 2000, he reported that he continued to have "excruciating" pain, with only moderate relief from prescribed medications (Tr. 413). Physical therapy had been attempted but discontinued due to severe pain with minimal activity. Plaintiff had "mainly left sciatica and also weakness in his left hand grip . . . " (*id.*). He was unable to "heel and toe" walk (*id.*). An MRI of the lumbar spine revealed mild stenosis at L4-5 and L3-4 and L2-3 levels, with a combination of mild disc bulging and "extensive ligamentum flavum hypertrophy" (enlargement of vertebral ligaments) (*id.*; *see also* Tr. 362). Dr. Collier found plaintiff to be "totally disabled. He is unable to sit in a chair for longer [than] 20 minutes then has to get up due to severe pain" (Tr. 414). Dr. Collier repeated his finding of total disability on several occasions after follow-up visits in July, August, and September 2000 (*see* Tr. 411, 408, 405); March, April, June, November, and December 2001 (Tr. 393, 385, 381, 367, 365); and January 2002 (Tr. 363).

The record also contains a medical report form completed on February 8, 2001 which indicates that, in Dr. Collier's opinion, plaintiff's ability to do work-related physical activities was limited as follows: occasionally lifting and carrying 5 pounds, standing and/or

walking less than 2 hours per day, sitting less than 6 hours per day, limited ability to push and/or pull with upper extremities due to cervical and lumbar pain and weakness, and limited manipulative ability due to cervical pain and weakness (Tr. 293-94).  According to Dr. Collier, plaintiff had extreme difficulty on ambulation, and was "able to do no type of activity which requires any physical exertion" due to decreased muscle tone, lower back pain, body weakness, and cervical pain (Tr. 295).

In response to a July 10, 2002 letter from the Social Security Administration (Tr. 458), Dr. Collier completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" form dated July 18, 2002 (Tr. 459-62).  Dr. Collier indicated that plaintiff could lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk at least 2 hours in an 8-hour workday; and sit less than 6 hours in an 8-hour workday (Tr. 459-60).  Plaintiff's ability to push and/or pull was limited in the upper extremities by his left shoulder pain.  He could occasionally perform the postural activities of kneeling, crouching, and stooping, and could never perform the activities of climbing or crawling (Tr. 460).  Plaintiff's impairments also limited his ability to perform the manipulative functions of reaching, handling, fingering, and feeling (Tr. 461).

In a post-hearing letter dated January 13, 2003, ALJ Mazzarella stated :

We note your opinion of less than sedentary capability in your Residual Functional Capacity [report] of 2/8/01 and 7/18/02 and repeated opinion of total disability in your narrative reports.  We have enclosed for your review a Functional Capacity Evaluation of 10/6/00 and an Independent Medical Evaluation exam of 4/16/01, both of which seriously call into question the veracity of Mr. Watson's subjective complaints.

Would you kindly review your opinions in light of these reports.  In the event your opinion is unchanged, would you provide us with the objective diagnostic and clinical evidence to support such opinion or in the alternative why you find the claimant's complaints to be credible.

(Tr. 547).

Dr. Collier responded by letter dated January 21, 2003 (Tr. 548-49).   Dr. Collier

noted the reports referenced by the ALJ, and stated that he had based his disability

assessment on statements plaintiff made during office examinations, which were

"consistently adhered to . . . over the last several years" (Tr. 548).   Dr. Collier continued:

> Today [plaintiff] states that he has continued inability to sit in a chair for more
> than one hour.  He must get up and walk and this relieves the pain and then
> he can sit again for another hour but must do this several times throughout
> the day.  He also finds that it is difficult to hold his head up and his best
> position is slightly flexed at the neck.  He has had tremors which have also
> occurred and have been chronic.  He finds that despite left shoulder surgery,
> he has continuing weakness in the left hand and pain on attempted
> abduction.  He is left handed dominant and finds he can write but only with
> difficulty.  He also has continuing lumbar pain and has been told by Dr. Bax
> that he has left carpal tunnel syndrome and continues with the left wrist
> brace.  He states that all these symptoms have occurred since the time of
> the MVA.
>
> . . .
>
> Overall he has shown minimal improvement from the time of the MVA on 5-
> 8-00 and based on his poor response is unclear whether any further
> improvement would ever occur.  It is also unclear whether the syrinx is
> related to the accident or whether any possible cervical spine investigation
> or treatment would ever improve his condition.

(Tr. 548-49).

The record also indicates that Dr. Young Yu, a neurologist, examined plaintiff on

several occasions between June 2000 and October 2002.   Upon initial examination,

plaintiff reported his history of being involved in the automobile accident on May 8, 2000,

upon which he immediately developed low back and left-sided sciatic pain (Tr. 360).

Examination revealed full range of motion at the shoulder joint (Tr. 361).   Deep tendon

reflexes were hypoactive.  Biceps and triceps strength were normal.  There was a pelvic

tilt and marked straightening of the lumbar lordotic curve noted.  Straight leg raising was less than fifty degrees bilaterally.  Knee jerks were dull.  Ankle jerks were present. Giveaway weakness was noted in the distal muscles of the lower extremities.  Plaintiff favored one side trying to avoid weight bearing on the left side.  Dr. Yu considered plaintiff to be "in total disability" (*id.*).  He recommended an MRI of the lumbar spine to rule out an acute lumbar disc herniation (*id.*).

Upon follow-up on July 12, 2000, Dr. Yu reported the results of plaintiff's June 2000 lumbar MRI, noting that he was not in favor of any surgical decompression at that time (Tr. 351, 357).  He prescribed carisoprodol, physical therapy, and MRI of the cervical spine (*id*). On August 25, 2000, Dr. Yu reported the results of the cervical spine MRI. There was no evidence of disc herniation, but there was a small syringomyelia at the C7 level.  Although he noted that physical therapy did not provide a beneficial effect, he recommended conservative management for the time being.  He stated that plaintiff remained disabled from his job (Tr. 356).

Dr. Yu saw plaintiff again on November 28, 2000.  He continued to complain of constant neck, bilateral shoulder, and arm pain as well as low back and bilateral leg pain. Upon examination, Dr. Yu noted that plaintiff's upper extremities were somewhat limited at the shoulder joints in elevation and abduction.  There was mild give-way weakness noted in the distal muscles of the upper extremities.  The weakness was more apparent on the left side than on the right in grip strength.  Deep tendon reflexes were hypoactive in the upper extremities.  Knee and ankle jerks were down.  Straight-leg raising was performed to about seventy degrees.  Dr. Yu stated that plaintiff "remain[ed] disabled" (Tr. 355).

-12-

Plaintiff saw Dr. Yu on five more occasions through October 29, 2002, with similar complaints and with similar findings noted upon examination.  On March 6, 2001, plaintiff continued to have persistent neck, interscapular, shoulder and arm pain.  Neurologically he remained "essentially unchanged" (Tr. 352).  Dr. Yu reported on a follow-up cervical MRI preformed in February 2001, noting "a small syrinx at the level of C7" which "did not get bigger" since the previous MRI (*id.*).  On July 18, 2001, plaintiff "remain[ed] disabled" (Tr. 350).  On November 14, 2001, plaintiff "remain[ed] disabled for his job at this time" (Tr. 347).  On July 30, 2002, plaintiff was recovering from arthroscopic shoulder surgery performed by Dr. Joseph Bax.  Dr. Yu stated that plaintiff was "disabled" (Tr. 515).  On October 29, 2002, plaintiff continued to have severe neck pain and radiating left side shoulder pain.  Neurological examination was limited by his continuing recovery from shoulder surgery. Dr. Yu reported on a further cervical MRI performed in September 2002, which revealed that the syrinx at C7 was slightly larger than shown on the previous MRI. His diagnosis was post traumatic syringomyelia at C7, cervical sprain, and status post arthroscopic left shoulder surgery.  Dr. Yu found plaintiff to be "disabled for any kind of employment at this time" (Tr. 537).

Plaintiff was also seen for neurological evaluation by Dr. Gregory Sambuchi on three occasions between August and October 2000.  On his initial visit, plaintiff complained of numbness and tingling in the left upper extremity, mostly in the left shoulder and left biceps region but extending to all five digits of the left hand.  He also complained of low back pain radiating down to the left calf region. Examination revealed limited neck flexion and extension secondary to pain and decreased lateral rotation.  Decreased pinprick was noted in the left medial leg, and from approximately T5 and down bilaterally (Tr. 288).  Noting the

results of the lumbosacral and cervical MRIs conducted in June and July 2000, Dr. Sambuchi diagnosed cervical strain with radiculopathy into the left upper extremity, lumbosacral strain with radiculopathy in the left lower extremity, and possible syrinx.  He reported that plaintiff was "totally disabled" (Tr. 289).

Upon "urgent follow-up" with Dr. Sambuchi on August 22, plaintiff related having worsening neck pain, along with "knife-like" headache pain (Tr. 284).   Examination revealed limited neck flexion and extension in bilateral lateral rotation secondary to severe pain.  There was diffuse cervical spinal pain which radiated into the left temporal region. There was tenderness to palpation of the mid-thoracic spine and lumbosacral spine, with negative straight leg raising bilaterally (*id*).  In Dr. Sambuchi's assessment, plaintiff had severe cervical strain and radicular symptoms in the left upper extremity, all causally related to the May 2000 accident.  Dr. Sambuchi was unsure about whether plaintiff had a syrinx, opting to wait for the results of the cervical MRI prescribed by Dr. Yu (Tr. 285-86).

Plaintiff saw Dr. Sambuchi again on October 17, 2000.  MRI results revealed a small syrinx at C7, and mild disc herniation at T7-8.  Examination again revealed severely limited neck flexion and extension in bilateral lateral rotation, with severe pain to palpation of the lower cervical spine.   Dr. Sambuchi's assessment was severe cervical, thoracic, and lumbar strains with radicular symptoms in the left upper and lower extremities; syrinx; and moderate spinal stenosis at L4-5 and L3-4 (Tr. 279-80).   In response to a post-hearing inquiry by ALJ Mazzarella dated January 13, 2003 (Tr. 541), Dr. Sambuchi stated that plaintiff "was disabled when he came to me and I felt his condition had not changed" (Tr. 541).

-14-

The record further indicates that plaintiff saw Dr. Eugene Gosy, a neurologist and pain management specialist, on several occasions between November 2000 and August 2002 (Tr. 429-36, 524).  Upon initial examination on November 3, 2000, Dr. Gosy reported that plaintiff had a "moderate partial" disability, but was "unable to return to work, as his regional job setting renders him effectively totally disabled" (Tr. 436).  On January 4, 2001, Dr. Gosy wrote that plaintiff's disability status was "mild to moderate partial, and that plaintiff was "unable to return to work at his prior physical job setting" (Tr. 431).  On March 1, 2001, plaintiff was "currently considered to be mild to moderate partially disabled but is unable to return to a heavily physical job endeavor" (Tr. 430).

On July 30, 2002, Dr. Gosy signed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" form indicating that plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, and could stand at least two hours in an eight-hour workday (Tr. 448).   Dr. Gosy did not provide a specific limitation with respect to sitting, but noted that plaintiff must periodically alternate sitting and standing to relieve pain or discomfort due to "myofascial pain syndrome" and neuropathic pain of the left upper extremity (Tr. 449).  Dr. Gosy indicated that plaintiff could frequently balance, but could never climb, kneel, crouch, crawl, or stoop (*id*.)  Plaintiff was limited to occasionally reaching and fingering (fine manipulation) because of neuropathic pain of the left upper extremity (Tr. 450).   Dr. Gosy also indicated that plaintiff was limited with respect to exposure to temperature extremes, vibration, and humidity/wetness as these environmental factors caused increased pain (Tr. 451).

In his thorough evaluation of the medical evidence, ALJ Mazzarella noted that he had carefully considered the opinions of Drs. Sambuchi and Collier, as well as Dr. Gosy's

opinion that plaintiff required a sit/stand option to satisfy the exertional demands of sedentary work, finding these opinions to provide "some support" for plaintiff's disability claim (Tr. 28).  However, the ALJ found that he was not bound by these opinions because they "are inconsistent with other substantial evidence and not well support[ed] by objective evidence" (*id.*).

The "other substantial evidence" relied on by the ALJ consists of the report of a functional capacity evaluation conducted by physical therapist Terrence Rose, P.T., on October 6, 2000 (Tr. 269-75), and the report of an independent medical examination conducted by neurologist Gaspare Alfano, M.D., on April 16, 2001 on behalf of State Farm Insurance (Tr. 313-19).  These are the reports referenced in the ALJ's January 13, 2003 letter to Dr. Collier, mentioned above.  The ALJ noted in his hearing determination that these evaluations both clearly indicated "symptom exaggeration" and were entitled to more weight than the opinions of treating sources which, according to the ALJ, were based at least in part on plaintiff's subjective complaints (Tr. 28-29).  As stated by ALJ Mazzarella:

> In summary, the [ALJ] gives little weight to the opinions of total disability or less than sedentary capability rendered by Drs. Sambuchi and Collier, and to the opinion of Dr. Gosy that the claimant requires a sit/stand option.  Each of the noted opinions is found to have been based on the claimant's subjective complaints and manifestations of those subjective complaints on clinical examination, including limitation of motion, postural limitations, and complaints of pain and tenderness.  Accordingly, the value of those opinions must be discounted by the claimant's clear attempts to exaggerate his symptoms and functional limitations in the course of both a functional capacity evaluation and an independent medical examination.

(Tr. 29).

It is clear from a reading of the ALJ's decision that he found the evidence of symptom exaggeration, indicated on two occasions–first, by a physical therapist who

performed a functional capacity evaluation, and second, by a consultative physician who performed an independent medical examination on behalf of an insurance carrier – sufficient to significantly outweigh the repeated opinions of total disability provided by several physicians who treated plaintiff on multiple occasions after his motor vehicle accident in May 2000.  In the court's view, this determination is at odds with the Social Security Regulations and rulings, as well as the pertinent case law, dealing with the Commissioner's obligations with respect to determining the weight to be accorded medical opinions from a claimant's treating sources.

As the Regulations make clear, if the record contains opinions of a claimant's treating sources as to the nature and severity of the impairment at issue which are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence, the Commissioner must assign those opinions "more weight" than that assigned to opinions rendered by a consultative examiner. 20 C.F.R. § 404.1527(d)(2).  This is because

> the treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . .

*Id.*; *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

In this case, as outlined above, the record contains considerable objective support for the opinions rendered by Drs. Collier, Yu, Sambuchi, and Gosy, among other physicians who treated plaintiff between May 2000 and January 2003, including the results of diagnostic imaging and arthroscopic shoulder surgery as well as physicians' reports and notes generated upon physical examination.   These treating sources regularly and

consistently expressed their opinions that plaintiff was either totally disabled or disabled from his job.  Under the Regulations, the ALJ was required to give controlling weight to these opinions, or to provide good reasons for the weight he accorded them while indicating, in a manner clear enough for subsequent review, his consideration of such things as the nature and extent of the treatment relationship, the evidence in support of the opinion, the opinion's consistency with the record as a whole, and other relevant factors. At minimum, he was required to give more weight to the opinions of Drs. Collier, Yu, Sambuchi, and Gosy, who treated plaintiff regularly over the course of more than two years, than he gave to the opinion of Dr. Alfano, who examined plaintiff on one occasion at the request of an insurance carrier in connection with an unrelated insurance claim. Instead, the ALJ credited Dr. Alfano's opinion (considered in conjunction with the physical therapist's opinion, also rendered upon a single visit) as to plaintiff's symptom exaggeration, and gave "little weight" to the opinions of plaintiffs' treating sources–none of whom ever indicated in any of their reports that plaintiff exaggerated his symptoms.

The Regulations also make it clear that physical therapists are not to be considered "acceptable medical source[s]" like licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a)(1-5).  Rather, physical therapists are considered "other sources" that may offer evidence, 20 C.F.R. § 404.1513(d), but that evidence is "entitled to significantly less weight" than the weight to be accorded to medical evidence offered by treating sources.  *Seilheimer v. Massanari*, 2001 WL 664456, at *7  (N.D.Ill. 2001) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)).  Accordingly, the ALJ was not at liberty

to give the physical therapist's singular opinion as to plaintiff's symptom exaggeration more weight than he gave to the treating sources' repeated opinions of total disability.

Finally, the ALJ erred in finding that the treating source opinions "must be discounted" (Tr. 29) because they were based on plaintiff's subjective complaints.  To the contrary, the case law is clear that the ALJ may not discount medical diagnoses as having been based only on the claimant's own complaints or recitation of events, because "[a] patient's report of complaints, or history, is an essential diagnostic tool." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997), *quoted in Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003); *see also* 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

## **CONCLUSION**

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination was based on an erroneous view of the legal standards for assessing the medical opinions of treating sources, with the result that the ALJ improperly disregarded highly probative evidence of plaintiff's eligibility for disability insurance benefits.  When given controlling weight, the opinions of plaintiff's treating sources make it clear that plaintiff's impairments could be expected to last for a continuous period of more than 12 months and limited his exertional capacity to less than the minimal requirements for sedentary work which, as recognized by the vocational expert who

testified at the hearing, would render him unable to engage in any kind of substantial gainful work which exists in the national economy (*see* Tr. 89-93).

"Where, as here, the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose, remand for calculation of benefits is appropriate." *Soto v. Barnhart*, 242 F. Supp. 2d 251, 253 (W.D.N.Y. 2003) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d   Cir. 1980)).   Accordingly, the Commissioner's motion for judgment on the pleadings (Item 6) is denied, plaintiff's cross-motion for judgment on the pleadings (Item 9) is granted, and this case is remanded to the Commissioner solely for the calculation and payment of benefits.

The Clerk of the Court is directed to enter judgment in favor of plaintiff.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: December   15   , 2006
p:\opinions\05-877.dec1306